# Court of Appeals.

February 23, 1904.

# THE PEOPLE v. ALICE. M. WEAVER.

(177 N. Y. 434.)

1. FORGERY—EVIDENCE—SCIENTER.

Where upon the trial of an indictment charging the defendant with having forged an indorsement upon a promissory note and with having uttered it so indorsed with intent to defraud, the defense is, that while she wrote the endorser's name upon the note without his express authority, she thought from prior transactions with him that she had the right to do so, and that she had no guilty intent in signing his name, a prior note purporting to have been executed by the defendant as maker upon which she wrote the name of the same indorser, which he testified had not been indorsed by him and to which he never authorized her to sign his name, is competent evidence to prove scienter.

2. INCOMPETENCY OF OTHER ALLEGED FORGERIES.

Permitting the indorser to testify or refer to other notes purporting to have been executed by the defendant, and claimed to have been forged, but which did not purport to be indorsed by him, and admitting them in evidence, constitutes reversible error.

3. CIRCUMSTANCES NECESSITATING EXECUTION OF THE NOTES INCOMPETENT.

The evidence of the prosecution should have been confined to notes purporting to bear the name of the indorser, whose name was alleged to have been forged, and if so confined, testimony as to the transactions relating to the debts, to secure which the notes were given, and as to the dealings between the defendant and her husband necessitating the execution of the notes, would have been properly excluded.

4. COMPETENCY OF CONFESSION.

A paper signed by the defendant, in which she confessed that she had forged the names of her mother and the indorser to the note in issue, is competent evidence against her, its weight being for the jury.

5. BELIEF THAT WRONGFUL ACT WOULD BE RATIFIED IMMATERIAL.

Where under the circumstances the question to be submitted to the jury is as to whether the defendant had, or believed in good faith that she had, authority to place the indorser's name upon the note, her expectation or hope that he would ratify such use of his name is immaterial.

People v. Weaver, 81 App. Div. 567, reversed.

APPEAL from a judgment entered March 18, 1903, upon an order of the Appellate Division of the Supreme Court in the fourth judicial department, which affirmed a judgment of the Monroe County Court entered upon a verdict convicting the defendant of the crime of forgery in the second degree.

The facts, so far as material, are stated in the opinions.

George Raines for appellant. The court erred in his charge to the jury that belief on reasonable grounds that Martin Davis would sanction and ratify her use of his name on that note was not to bear upon the criminal intent unless she believed "also that Martin Davis would recognize her act as a proper and right act which she had a right to perform," and in refusing to charge that if she believed Martin Davis would sanction and ratify the name on that note the jury could consider the fact on the question of criminal intent. (People v. Wiman, 9 Misc. Rep. 441; 85 Hun, 320; 148 N. Y. 24; Howard v. Duncan, 3 Lans. 174; Union Bank v. Mott, 33 Conn. 95; Thorne v. Bell, Lalor Supp. 430; 1 Whart. Cr. Law [9th ed.], §87; G. Bank v. Crafts, 4 Allen, 454; Culver v. Ashley, 19 Pick, 301; Wellington v.

Jackson, 121 Mass. 157; Parmelee v. People, 8 Hun, 624.)
The court erred in excluding large amounts of evidence
which reasonably afforded an inference of the truth of Mrs.
Weaver's belief that Davis would approve and ratify his sig-
nature made by her and which corroborated at the same
time her denial of intent to defraud and criminal intent and
in limiting the use of evidence admitted.    (Morris v. State,
95 Ind. 73; Quincey v. White, 63 N. Y. 370; People v. Bur-
ton, 1 N. Y. Cr. Rep. 297; People v. Campbell, 18 Wkly.
Dig. 256; People v. Peckens, 12 N. Y. Cr. Rep. 446; People
v. Buddenseick, 4 N. Y. Cr. Rep. 330; Farrell v. State, 32
Ohio St. 456; People v. Moore, 3 N. Y. Cr. Rep. 470; Cone
v. Stone, 4 Metc. 43 ; Cone v. Brew, 19 Pick. 179,)    The
court erred in charging the jury in what the intent to
defraud in this case consisted, and what matters they should
consider as proving intent to defraud.    (People v. Flack,
125 N. Y. 339; People v. Corey, 148 N. Y. 492; People v.
Webster, 139 N. Y. 73; People v. Platt, 4 N. Y. Cr. Rep.
54; People v. Baker, 96 N. Y. 350; People v. Stevens, 109
N. Y. 163.)    The judge impressed his personal opinion that
the defendant was guilty and a verdict was due against her
at all points in his charge on every issue so that it was con-
spicuous and erroneous.    (People v. Brow, 90 Hun, 509;
People v. Gorman, 83 Hun, 605; People v. McKenna, 81 N.
Y. 360.)    It was error to use the word "forged" in the
trial as descriptive of all paper on which Mrs. Weaver had
written the other names, and grossly prejudiced her.    (Wig-
gins v. State, 3 Am. Cr. Law, 142; People v. Marks, 6
Park. 152.)    The court erred in receiving in evidence proof
of the name of S. J. Weaver on five notes, and others not
produced, written by Mrs. Weaver , and of the conversation
of Mrs. Weaver, Fenn and Weaver about her signing Weav-
er's name thereon, and in excluding the evidence in
explanation as to the origin in Weaver's debt for living
expenses; history of consideration and authority for her act

in writing Weaver's name, by conversations or by any other evidence than her own bare statement; that the proceeds went to household bills and that the indebtedness was Weaver's. (People v. Coleman, 55 N. Y. 81; People v. Gibbs, 93 N. Y. 470; People v. O'Sullivan, 104 N. Y. 481; People v. Hall, 6 Park. 673; People v. McLaughlin, 150 N. Y. 365; State v. Cole, 19 Wis. 147; People v. Logrielle, 1 Wheeler Cr. Cas. 412; Regina v. Cooke, 8 C. & P. 906.)

Stephen J. Warren, District Attorney (Robert Averill of counsel), for respondent. The defendant was properly convicted. (People v. Fanning, 131 N. Y. 663; Com. v. Henry, 118 Mass. 460; Reg. v. Beard, 8 C. & P. 143; Reg. v. Hill, 8 C & P. 274; Reg. v. Cooke, 8 C. & P. 584; Reg. v. Gench, 9 C & P. 499; People v. Stevens, 109 N. Y. 164.) No error appears in the charge. (People v. Stevens, 109 N. Y. 164; Reg. v. Beard, 8 C. & P. 569.) It was no error for the court to exclude evidence which merely tended to show ground for defendant's alleged belief that Mr. Davis would come to her rescue and assume the liability on the forged paper. (People v. Stevens, 109 N. Y. 159; People v. Wyman, 85 Hun, 332.) No error was committed in charging on the subject of fraud, and upon the subject that the defendant's means and intention to pay the note furnished no defense. (People v. Webster, 139 N. Y. 73; Morris v. People, 3 Den. 403.) The question of whether the bank was induced to part with its money, relying upon Davis' indorsement, was left entirely to the jury. (People v. Canon, 139 N. Y. 645; Tweed v. Davis, 1 Hun, 256; Smith v. N. E. R. R. Co., 57 App. Div. 152; People v. Dimick, 107 N. Y. 13; People v. McCallum, 103 N. Y. 597; Coleman v. Burr, 93 N. Y. 17.) It was no error to cross-examine defendant upon the question of her having committed other forgeries and of her having been previously warned by Mr. Fenn of the serious nature of signing other people's names, nor in receiving proof of such warning. No competent evidence

which explained her act, or which might tend to show an authority on her part to use these names, was rejected. (People v. Everhardt, 104 N. Y. 595.)

O'Brien, J. The defendant, a married woman, was indicted by the grand jury of Monroe county for the crime of forgery in the second degree. The case was tried in the County Court, and upon the first trial the jury disagreed, but upon the second trial the defendant was found guilty and sentenced to the penitentiary for the term of one year. The Appellate Division in the fourth department affirmed the judgment of conviction, and the defendant has appealed to this court.

The printed record in the case is very confusing. It contains much matter that was irrelevant to the issue on trial. There is incorporated in it extracts from the minutes of the first trial and frequent references to the evidence then given. This may be unavoidable where there has been two trials of a case, but there would seem to be no reason for encumbering the record by long and extended arguments of counsel every time an objection is made, or with the opinion of the court at length in passing upon the objections.

The issue, primarily, was a very simple one, although in the course of the trial it was involved in much intricacy. The defendant was charged with having forged the name of Martin Davis to a promissory note for $1,200, which note she procured to be discounted at the Commercial Bank of Rochester. The indictment contains two counts; one for forging the name as indorser, and the other for uttering the note so indorsed to the bank with intent to defraud The verdict was general and the import of it is that the defendant not only forged the name of Davis, but uttered the spurious paper to the bank with intent to defraud. Davis was an attorney and counselor at law, and a close intimate friend of the defendant and her husband. He had practically been a member of the family and made their house his

home while in the city. His close and intimate relations with the defendant and her husband is one of the facts that is admitted in the record. He had frequently indorsed the defendant's paper prior to the occasion in question, and some or all of that paper was unpaid at the time of the trial of this case. The defendant went to the office of Davis and procured him to draw the body of the note in question ; that is to say, he used a printed blank, such as is to be found in banks, and filled it out for the defendant and delivered it to her unexecuted. The note is in the following words :

"Traders National Bank, Rochester, N. Y. $1200.00. Rochester, N. Y., Sept. 17th, 1900. Three months after date I promise to pay to the order of Harriet E. Wells twelve hundred dollars at the Commercial Bank, Rochester, N. Y. For value. (Signed) Alice M. Weaver. (Indorsed) Harriet E. Wells, Martin Davis."

Harriet E. Wells, the other indorser, was the mother of the defendant, and it appeared that the defendant and her mother had been formerly possessed of considerable property, but that their affairs had of late become involved and considerable of their paper, containing the indorsements of Davis, of Mrs. Wells, the defendant's mother, and of S. J. Weaver, the defendant's husband, had been discounted from time to time in the Rochester banks.

There was no dispute about the fact that the indorsement of Davis on the note in question was not in his handwriting. His name was placed upon the note by the defendant without first obtaining any express authority from him to do so. The defense was that under all the circumstances connected with the making of the note and the use to be made and which actually was made of its proceeds, there was an absence of wrongful or guilty intent on the part of the defendant in signing Davis' name. The defendant testified, substantially, that she thought she had the right to use Davis' name upon the paper, and her assertion in that

respect had some color of truth from the past intimate relations of the parties. She says that after Davis drew the note for her she indorsed her mother's name upon it, supposing she had authority to do so, and in this she is corroborated by the testimony of her mother on the stand. She then took the note to the bank, and one of the bank officers said to her that he wanted the name of Davis upon it, whereupon she went to Davis' office twice, and not finding him in she wrote his name upon the back of the paper, supposing it was all right and she had the authority to do so. The money obtained upon the note, or at least a thousand dollars of it, was paid over by the defendant to her husband to take up another note at the bank upon which his name appeared as indorser. It seems that at or about this time the defendant and her husband became involved in some domestic troubles and he commenced an action for a separation from her, wherein it was claimed, as one of the grounds of the action to be relieved from his wife, that she had been guilty of forgery. Davis was sworn as a witness and testified on cross-examination that he had advised her husband not to pay the note. He was questioned at great length by the defendant's counsel in regard to his relations with her husband, and as to his habit of indorsing paper for the defendant and the purposes for which the money was raised.

The question that was submitted to the jury was whether the defendant in placing the name of Davis upon the note in question acted in good faith, honestly believing that she had the right to do so and with respect to the intent to defraud. In this respect the case resembles that of People v. Wiman (148 N. Y. 29). The testimony of the defendant upon direct and cross-examination is somewhat conflicting and different inferences may doubtless be drawn from her statements, but since the jury was requir-

ed to pass upon the question of her good faith and of her honest belief in the right to place the name of Davis upon the paper, that issue should have gone to the jury unprejudiced by matters foreign to the issue. In this respect I think the trial was not quite fair to the defendant. Upon the redirect examination of Davis by the district attorney he was asked that if at the time he advised the husband not to pay the note in question, there were other notes talked of and which the witness took into consideration in giving that advice. This was objected to by defendant's counsel as incompetent and collateral, and that it tended to prove another and distinct offense. The court stated that it would allow it for the purpose of showing whether the motive of the witness in giving the advice was a proper motive, or whether he was actuated by a sinister or improper motive towards the woman. The defendant's counsel excepted to the witness' answer. "I had in my mind this $1,200 note of the Commercial Bank, a $5,000 forged note at the Traders' Bank, a $1,000 forged note at the Traders' Bank, the notes which I had endorsed generally and whatever accounts Mrs. Weaver had outstanding." The court then said : "I think I must strike out of the statement the characterization of those notes as forged notes. The jury will disregard the characterization of those other notes as forged notes." This direction of the court was perhaps all that could be done to correct the record with respect to the statement volunteered by the witness, and if the subject had rested there no legal error could have been predicated upon it. But after some further examination of the witness the district attorney produced the $5,000 note referred to that bore the name of the defendant as maker and her mother, Harriet E. Wells, Martin Davis and S. J. Weaver as indorsers. He questioned the witness about having talked with the defendant in regard to this note, and then asked if the name appearing upon the note was his sig-

nature. This was objected to as tending to prove a distinct and different charge against the defendant. The objection was overruled, an exception taken, and the witness answered that it was not. He further testified, under objection and exception, that he never authorized the defendant to sign his name to the $5,000 note.

The note was introduced in evidence, the court remarking in answer to defendant's objection that it was received only on the question of the intent with which the defendant put Davis' name on the $1,200 note. That, of course, was the only issue in the case. From that time forward, during the progress of the trial, the $5,000 note and the $1,200 note were referred to as forgeries. Defendant's counsel made some strenuous objections to the characterization, and the court at one stage of the trial stated "that a person guilty of forgery was defined by the statute to be 'a person who forges a note with intent to defraud;' that the statute seems to use the word 'forgery' as a general term, referring to the signing of another's name." He added: "I do not think the use of the term carries with it the implication of the intent to defraud, because the statute uses the word 'forgery' and inserting thereafter 'with intent to defraud,' thereby implying that there might be a name forged without intent to defraud." It was nowhere admitted by the defendant that she had forged any note, and the genuineness of the indorsements of Davis and defendant's husband and mother upon this note and upon other notes of the same character was made an issue at the trial. Of course if they were claimed to be forged, proof of that claim became necessarily a part of the trial, and the defendant was not only compelled to defend herself against the only charge for which she was tried, that is to say, the $1,200 note, but also against the charge that she had forged not only the name of Davis upon the $5,000 note, but the names of her mother and hus-

band as well, and not only upon that note but upon other notes of like character.

The question is whether this method of treating a single charge of forgery against the defendant was legitimate and proper.   It is perfectly evident that the case went to the jury for them to pass, not only upon the character of Davis' indorsement upon the $1,200 note, but upon his indorsement and that of the mother and husband of the defendant upon the other notes as well.   Whatever the technical or statutory definition of the word " forgery " may be, we must consider the introduction in evidence of these notes other than the $5,000 note and the character of the several indorsements upon them, followed by testimony that the indorsers did not sign or authorize the defendant to sign their names and reference to them throughout the trial as forgeries with respect to its probable effect upon the minds of the jury.

The defendant was on trial for forging the $1,200 note and no other, and that the evidence referred to with respect to the forging of the other notes must have had a very prejudicial effect upon the defendant's case cannot be doubted. Not only the $5,000 note, which may have been admissible, but other notes, some of which were claimed to be forgeries, went to the jury.   The $5,000 note was so connected with the note charged in the indictment to be forged that it may have been admissible on the question of intent in uttering the $1,200 note.   (People v. Everhardt, 104 N. Y. 591.) It is clear that upon the single issue raised by the defendant namely, that there was no intent on her part to defraud, that she acted in good faith and in the honest belief that she had a right to do what she did, this testimony as to the other indorsements must have greatly embarrassed the defendant upon the trial of the only issue in the case, and must have tended to prejudice and mislead the jury.

In Coleman v. People (55 N. Y. 81) it is said :   "The

general rule is against receiving evidence of another offense. A person cannot be convicted of one offense upon proof that he committed another, however persuasive in a moral point of view such evidence may be. It would be easier to believe a person guilty of one crime if it was known that he had committed another of a similar character, or, indeed, of any character, but the injustice of such a rule in courts of justice is apparent. It would lead to convictions, upon the particular charge made, by proof of other acts in no way connected with it, and to uniting evidence of several offenses to produce conviction for a single one." (People v. Corbin, 56 N. Y. 363.)

In People v. Sharp (107 N. Y. 427) it was said : " The general rule is that when a man is put upon trial for one offense he is to be convicted, if at all, by evidence which shows that he is guilty of that offense alone, and that, under ordinary circumstances, proof of his guilt of one or a score of other offenses in his lifetime is wholly excluded. This question has been elaborately treated in a recent case in this court in which the same views were expressed." (People v. Molineux, 168 N. Y. 264.)

The case was submitted to the jury under instructions from the court that they must pass upon the truth of the defendant's testimony to the effect that she believed she had the right to place Davis' name upon the note as indorser. The language of the court was : " She says she believed she had that right. In determining whether that is a frank, honest statement, whether she did have that belief, it is right for you to take into account the fact that she and Davis had never had any conversation touching, or giving to her, any such liberty. She says she believed she had that right, and when you come to consider whether she actually did believe that, you have a right to consider whether the circumstances of this case would have given any rational person any such belief. Put your good, common, every-day

sense on that question, and determine whether it is true that this woman actually and honestly believed that she had the right to use Martin Davis' name as indorser." This question having been submitted to the jury, it should not have been prejudiced in their minds by proof, under objection, of the commission of other crimes not related to the one charged. The jury might not have believed the testimony in any event, but no one has a right to say that it was impossible for them to attribute good faith and an honest purpose to the defendant. But when the case was prejudiced and loaded down with proof of the forgery of numerous other signatures upon commercial paper, there was no longer any chance for the defendant with the jury, and in perusing the record it is quite difficult, when we lay aside the charge in the indictment, to tell whether the defendant was on trial for the forgery of the $1,200 note, or the other notes referred to.

In another aspect of the case the trial was not entirely fair to the defendant. The situation was exceptional and peculiar. On the face of the record the conclusion is possible that the debt for which these various notes were given at the bank was for household expenses and, therefore, prima facie the debt of the husband and not of the wife. Under such a state of facts the wife might very well have had ample authority, or believed she had, to use her husband's name in procuring money for the payment of the obligations. She may not have had any such authority in fact, but the question is whether she honestly believed that she had, and in view of her relations to the household, and the close and intimate relations of Davis to that household, it is not absolutely inconceivable that she may have acted under a mistaken impression as to her power, and if that were so, as the learned trial judge ruled and charged, the guilty intent would be absent from the transaction.

When proof of other crimes is introduced by the People to

prove that the defendant is guilty of the particular crime charged, the multiplication of issues is a necessary consequence, and if it was competent, under any view of the case, for the People to prove that the defendant was guilty of forging other notes than the one described in the indictment, then it was certainly competent for her to give proof to show that they were not forgeries in any legal sense. The origin and consideration of these notes had a bearing upon that question, and she had the right to go into the details and circumstances of each transaction. The mere fact that she was permitted to state in a general way that the consideration was for the expenses of the household, and, therefore, the debt of the husband, does not answer the objection, since the jury might not have credited such a general statement. She had the right to fortify her testimony by stating the origin and purpose of each particular note and the relation of the husband to the same as the head of the house and of Davis as an inmate of the family. This would doubtless involve inquiries that would have but little relation to the particular issue presented by the indictment. But since the People were permitted to give the general statement that the notes were forged, the defendant was entitled to give all the particulars which culminated in the discount of the notes at the bank. The defendant, I think, was unduly restricted by the rulings of the learned trial judge in this respect, since while he admitted the defendant's general statement, he rejected proof of the facts which might support her general conclusions. These several rulings are involved in this appeal, since they are presented by numerous objections and exceptions.

There were one or two passages in the charge that I think were erroneous and prejudicial to the defendant. The general question that the court submitted to the jury was whether the defendant honestly believed when she wrote the name of Davis upon the note she had the authority or the

right to do so, and whether in placing his signature upon the note she acted in good faith and without any criminal intent.    After submitting that question to the jury the learned trial judge proceeded as follows :    " Now, gentlemen of the jury, did the defendant honestly believe that she had the right to use Davis' name as indorser ?    I must say to you, gentlemen, that there is not one particle of evidence in this case from beginning to end tending to prove that she did have the right to use Martin Davis' name as indorser." After this statement there was but little use in saying to the jury that they were at liberty to look for the evidence in the record if they could find it.    It was a clear, plain and strong expression of opinion on the part of the learned trial judge that there was no evidence for the consideration of the jury upon a vital question in the case.    That portion of the charge was excepted to by the defendant's counsel, and this exception is one of the grounds alleged for the reversal of the judgment.    It is not competent for the trial judge in any case to instruct the jury that there is no evidence in the case that would justify the acquittal of the defendant.    If that practice is to be sanctioned we must go further and hold that the trial judge in such case may order a verdict of guilty.    But the question whether a criminal act has been committed in any case, and whether, if committed, it was accompanied by the indispensable criminal intent, is a question for the jury, and that part of the charge quoted, in effect, took the whole question from the jury and was equivalent to a direction to find the defendant guilty.

The learned trial judge also addressed the jury in these words :    " Now, gentlemen, the court cannot direct you to find the defendant guilty.    That would be an invasion of your jurisdiction.    I cannot even suggest to you that you find her guilty.    I must leave the whole matter upon your consciences and upon your intelligence.    But I am permitted to say that in judging whether Mrs. Weaver intended to

defraud the bank or not, you have the right to use that presumption which exists that the person intends the ordinary result and consequences of his act."* But after the learned trial judge had told the jury that there was not one particle of evidence to support her defense, there would seem to be no great difficulty in suggesting to the jury in plainer terms that they ought to find the defendant guilty. I think that both of the passages quoted in effect took the whole case from the jury and amounted practically to a suggestion to the jury that they ought to return a verdict of guilty.

The judgment should be reversed and a new trial granted.

Per Curiam. As the facts in this case are sufficiently narrated in the opinions of Judges O'Brien and Werner, we think it necessary simply to state the various questions presented by this appeal and our determination of the same without comment or discussion. We hold,

1. That the five thousand dollar note, purporting to bear the indorsement of Davis, was competent evidence to prove scienter on the part of the defendant.

2. That it was error to allow the witness Davis to testify or refer to the other notes alleged to be forged but which did not purport to be indorsed by Davis.

3. That the admission in evidence of such alleged forged notes was error.

4. If the evidence of the prosecution had been confined, as it should have been, to notes purporting to bear Davis' indorsement, testimony as to the transactions relating to the debt, to secure which the above-mentioned notes were given, and as to the dealings between the defendant and her husband would have been properly excluded.

5. The confession signed by the defendant was competent evidence against her. Its weight was for the jury.

6. The question to be submitted to the jury was not the

defendant's expectation or hope that Davis would ratify the use of his name as indorsed on the note, but whether the defendant had, or believed in good faith that she had, authority to so indorse the note in the name of Davis.

For the errors pointed out the judgment should be reversed and a new trial granted.

WERNER, J. (dissenting). The indictment herein charges the defendant with the crime of forgery in the second degree. The specific charge is that the defendant forged the name of one Martin Davis as indorser to a promissory note for $1,200.00, dated the 17th day of September, 1900, payable to the order of Harriet E. Wells, three months after date, at the Commercial Bank of Rochester, and procured the said bank to discount the same on the day of its date.

At the trial the defendant admitted the signing of Davis' name as indorser upon the note, and the discount thereof at her request by the Commercial Bank, but denied criminal or fraudulent intent in the transaction. Upon the issue thus presented the defendant was convicted as charged in the indictment, and at the Appellate Division the judgment of conviction entered upon the verdict was affirmed.

The defendant's plea of not guilty put in issue every fact that it was necessary for the prosecution to establish in order to prove the crime charged (People v. Everhardt, 104 N. Y. 595) and intent is one of the essential elements of the crime of forgery. (Sec. 512, Penal Code.) Intent is a state of mind, and that is a thing not provable by direct evidence. This is the reason for the rule that in all cases where the scienter or quo animo is requisite to and constitutes a necessary and essential part of the crime with which a person is charged, and proof of guilty knowledge is indispensable to establish his guilt in regard to the transaction in question, testimony of such acts, conduct or declarations of

the accused as tend to establish such knowledge or intent is competent, notwithstanding they may constitute in law a distinct crime. (Wharton's American Criminal Law [6th ed.], sec. 649; 3 Greenleaf on Evidence, sec. 15; Stephen's Dig. of Ev. [May's ed.] pp. 56; People v. Everhardt, 104 N. Y. 595; Mayer v. People, 80 N. Y. 373; Commonwealth, v. Russell, 156 Mass. 196; Rex. v. Colclough, 15 Cox Crim. Cas. 92; People v. Molineux, 168 N. Y. 298.)

Since the crime of forgery is one of the exceptions to the general rule, that the intent with which an alleged crime has been committed may be inferred from the act, it is also an exception to the other general rule, that proof of one crime may not be made to establish guilt of another crime.

The specific charge against the defendant was the forgery of the name of Martin Davis as indorser upon the note for $1,200 above described. The defendant admitted the writing of Davis' name upon the note, and that she had no direct or express authority to do so ; but she claimed that she thought she had the right to make such use of Davis' name and, therefore, it is now asserted there was neither necessity nor excuse for proving other forgeries said to have been committed by her.

By her plea, as well as by her testimony at the trial, the defendant denied guilty intent. Her admission as to the use of Davis' name was coupled with a claim of right to use it. This left the prosecution no alternative but to establish intent by the usual means in such cases, namely, by evidence of other forgeries of the defendant that were so related in time, place and circumstance to the forgery charged in the indictment as to throw light upon the intent with which it was committed. The authorities above referred to leave no room for doubt as to the propriety of this course of procedure, and we might here safely rest this feature of the case without further discussion, were it not for the strenuous contention that under the peculiar circumstances surround-

ing this transaction, evidence of other forgeries by the defendant was inadmissible. At this point a few facts from the record, which form a part of the history of the case, will throw light upon the question under consideration.

The defendant is the wife of one Simon J. Weaver, a merchant of Rochester, N. Y. Martin Davis, the man whose name the defendant is charged with having forged, is a lawyer of the same place. During their school years these two men formed a friendship for each other which was continued after Weaver's marriage and resulted in an association between Davis and the defendant which, to use the latter's own words, "was as intimate as it could possibly be and be honorable in every way." Davis was, for a time, an inmate of the Weaver household, and at other times frequent visits were exchanged between the Weavers and Davis. In 1898 or 1899, the defendant went to the office of Davis and asked him if he would help her raise the sum of $2,500.00. Davis declined to do so, saying that he should not care to indorse for more than five or six hundred dollars but, in a subsequent conversation, he stated that the amount must not exceed one thousand dollars. The result of these interviews was that, at different times, Davis indorsed several notes for the defendant aggregating the sum of about thirteen hundred dollars. This was the condition of affairs on the 17th day of September, 1900, when the forgery charged in the indictment is alleged to have been committed. On the 2nd day of October, 1900, Davis made the discovery that his name had been used on the note last mentioned. He testified that the written part of the face of the note was in his handwriting ; that he had drawn the note at defendant's request ; that nothing was said about his indorsing the note ; that he had not indorsed it, and that he had not authorized the defendant to do so in his name. The note upon which the charge of forgery is predicated was then put in evidence. This was the state of the case when

Davis was taken in hand for cross-examination by defendant's counsel. After the evidence of the relations of Davis to the Weavers had been somewhat amplified, the cross-examination was suspended for the purpose of taking the testimony of Swanton, the cashier of the bank at which the note in controversy had been discounted. Swanton detailed the conversation between him and the defendant from which it appeared that, three or four days before the 17th day of September, 1900, the defendant came to the bank and asked him if he would loan her $1,200.00 on the indorsement of Davis and her mother. He replied that he would and on the 18th day of September, 1900, the defendant presented the note in question; bearing two indorsements purporting to be those of Davis and Harriet E. Wells, the mother of the defendant. Swanton assumed that these signatures were genuine, the note was discounted and the proceeds thereof credited to the defendant's account.

When the cross-examination of Davis was resumed, it appeared that on the 2nd day of October, 1900, after the discovery by him that his name had been used upon the note of September 17th, there were was a conference at his office in which he advised Weaver not to pay any of the notes made by the defendant. Defendant's counsel had several times announced his intention to go into all the family relations and domestic troubles of the Weavers for the purpose of showing that the notes signed by the defendant represented a household debt which Weaver was morally, if not legally, obligated to pay. For that purpose he had introduced in evidence several of the notes actually indorsed by Davis. The learned trial court excluded the evidence that seemed to have no relation to the note set forth in the indictment, but expressed a willingness to admit such evidence as tended to show the attitude and animus of Davis in the prosecution of the charge at bar, and for that purpose alone received the evidence of Davis as to the advice which

he gave Weaver regarding the payment of the notes. In this behalf Davis testified at considerable length, but finally summarized his evidence by saying that he advised Weaver not to pay any notes that he was not legally liable for. This was the state of the case when the district attorney upon his redirect examination of Davis asked him the following question : "At the time you advised Mr. Weaver not to pay the $12,000.00 note were there other notes talked of in that conversation?" This was objected to as incompetent, immaterial, collateral and proving a distinct offense. The witness was allowed to answer and he testified : "I told him the amount was so large he could not afford to pay it all, and payment of part of it might possibly involve his liability as to the whole." Being then interrogated, under objection, as to the different notes referred to in the conversation, he further stated, "I had in mind this $1,200.00 note at the Commercial Bank, a $5,000.00 forged note at the Traders' Bank, a $1,000.00 forged note at the Traders Bank, and the notes I had indorsed genuinely and whatever accounts Mrs. Weaver had outstanding." The characterization of the notes as "forged" was stricken out on motion of the court and, as thus modified, the evidence was allowed to stand against the exception of the defendant's counsel. At subsequent stages of the trial, however, the same characterization was again indulged in by the district attorney as to the $1,200.00 and the $5,000.00 notes, and the exceptions thereto, as well as to all evidence relating to other notes than the one set forth in the indictment, are vigorously urged upon our attention as sufficient grounds for reversing the judgment herein.

The first thing to arrest attention in this regard is that the $1,200.00 note characterized as a forgery is the note in issue. The indictment stigmatized it as a forgery and the claim that it was a forgery was the central fact in the case of the prosecution. Whether it was a forgery was the ques-

tion to be decided by the jury. To hold that under such circumstances the characterization of the note by the district attorney was legally prejudicial to the defendant, would be to encourage technicality to the limit of absurdity.

Passing to the $5,000.00 note we find that it purports to have been indorsed by Davis. He says he did not indorse it. The defendant admits that Davis did not indorse it, and says that she signed his name to it under circumstances precisely identical with those that attended her signing of his name to the $1,200.00 note. It must have been clearly apparent to the jury that the $5,000.00 note was claimed to be a forgery, and while the district attorney might well have referred to it in some milder form than he did, there was practically no controversy over the fact that this note stood upon precisely the same footing as the note which was charged to have been forged. It is inconceivable that under such circumstances the jury could have been prejudiced or misled by what the district attorney said about the note.

That the $5,000.00 note was properly received in evidence cannot be doubted. It was received subject to the distinct limitation that it was only competent as bearing upon the intent with which the defendant wrote the name of Davis upon the note in issue. Under the authorities above cited, it would have been admissible in the first instance upon the question of intent, and it is difficult to understand why it was any the less proper for that purpose after the cross-examination of a witness had rendered it admissible in still another aspect of the case. Davis, having been cross-examined as to the advice he gave Weaver about paying the notes made by the defendant, had the right to exculpate himself from the implication of hostility or animosity toward the latter, and, therefore, it was competent for him to explain what he took into consideration in giving the advice.

It is urged that the introduction in evidence of other notes than the one set forth in the indictment must have been

prejudicial to the defendant, because it enabled the jury to make comparison of handwritings, and this was unnecessary since there was no denial of the fact that the defendant had signed the name of Davis to the note in issue.   This argument ignores three important facts.   The first is that, notwithstanding defendant's admission, she denied any criminal intent.   The second is that the signature, which purported to be that of Davis, was competent evidence upon the question of intent.   The third is, that there was some evidence upon the subject of attempted simulation.   The evidence of Swanton, the cashier, was to the effect that he discounted the note in issue, believing that it bore the genuine indorsement of Davis.   The defendant's own signature was before the court as a standard with which the jury had the right to compare the indorsements written by her in the name of others, for the purpose of ascertaining whether they disclosed any evidence of simulation and, hence, of criminal intent. (Cobbett v. Kilminster, 4 Fost. & Fin, 490; Hickory v. U. S., 151 U. S. 303; Merritt v. Campbell, 79 N. Y. 625; People v. Molineux, 163 N. Y. 330.)

It is also claimed that error was committed in allowing the district attorney, upon defendant's cross-examination, to put in evidence certain notes purporting to bear the indorsement of S. J. Weaver and Harriet E. Wells, but in fact written by the defendant.   This criticism cannot be intelligently discussed without another brief reference to the record.

When the defendant took the witness stand the prosecution had produced no collateral evidence of defendant's criminal intent in using the name of Davis upon the $1,200.-oo note, except that relating to the use of the same name upon the $5,000.00 note.

The defendant had admitted the use of Davis' name upon both of these notes, but denied guilty intent.   Then, instead of standing upon some supposed or implied authority to use

the name of Davis, arising out of his relations to her family or out of other circumstances, defendant admitted that from January, 1898, to September, 1900, Davis had never refused to indorse a note for her when she requested it, and that she had asked him to indorse various notes which, in September, 1900, amounted to about $1,300.00. She testified, "I presented the note with mother's indorsement on it and Mr. Swanton told me he would feel safer if he had Martin's (Davis') name on it, and I went to Mr. Davis' office and he wasn't in and I had to have the money that day, so I signed his name to it. I think if I am not mistaken I made two trips to Mr. Davis' office to find him after that, but could not find him." She admitted that she had never told Mr. Davis that she had signed his name as indorser on the $5,-000.00 note, although that note had been made and discounted more than a month before the note in issue. She had been pressed upon her direct examination to state fully why and how she came to use Davis' name, and the court had ruled that the witness might state what her purpose was in making this paper. But, in spite of this ruling and the skillful leading of her counsel, she had refrained from stating a single fact or circumstance upon which a jury could predicate any authority to use the name of Davis upon the note in issue, except her belief that it would be sanctioned and ratified by him. When asked, upon her direct examination, to state her belief as to her authority to use Davis' name, her answer was; "My belief was, I expected these funds I had been talking about and I would have means to take care of it, and, if I did not, that my husband would take care of it for me." Then she was asked this leading question: "At the time you made this note and put the name of Davis upon it, did you believe that Mr. Davis would sanction and ratify the writing of his name by you?" to which she answered, "I did." In the same connection she had testified that at the time of making the $1,200.00 note she be-

lieved she was authorized to use her mother's name upon it. She had reiterated, over and over again, the absence of any intent to defraud Davis or the bank. This was the situation when her cross-examination was taken up and she was interrogated as to some of the other notes, which it is claimed were erroneously received in evidence, and in reference to which it is asserted that explanatory evidence was improperly excluded.

It appeared, as above stated, that the $1,200.00 note had been drawn by Davis at defendant's request. The theory of the district attorney was that this was a part of defendant's plan to give the note an appearance of genuineness that would disarm suspicion as to the reality of the indorsement. The defendant, on the other hand, claimed that she had Davis draw the note because she was not familiar with that kind of business. For the purpose of showing defendant's knowledge in such matters, the district attorney called her attention to several notes, and among them was one which was admitted to be in defendant's handwriting. It was offered in evidence and objected to on various grounds, whereupon the court asked the defendant if at the time of the transaction in September, 1900, she knew how to draw a promissory note. She answered that she did not. The note was received in evidence, as the court stated, " for the purpose of showing that she had written, in her own handwriting, a complete note without any printed blank.'' Thereupon the defendant was permitted to explain that she had copied the note from an old renewal note.

This ruling calls for but little comment. If the introduction of this note tended to show that defendant had some ulterior motive in procuring the note in issue to be drawn by Davis, it was competent. If it did not serve to establish that, it was quite immaterial and harmless. In either event it presents no error that requires reversal of this judgment.

After further cross-examination of the defendant at great

length as to her alleged admissions upon the former trial, and in a conversation with one Fenn, the cashier of the Alliance Bank, the district attorney took up the notes for $5,-000.00 and $1,200.00. When asked whether she intended to make Davis liable upon either of these, the defendant testified, "I intended to take care of them. I did not intend Martin Davis should be called upon to pay these notes, and did not intend the bank should hold him legally liable on these notes. I did not intend he should be liable for them." It was at this juncture that the district attorney asked the defendant if she had placed her mother's name upon the $5,000.00 note, and also upon a $1,500.00 note made in July, 1900. She admitted signing her mother's name to the $5,000.00 note, but declined to answer as to the $1,500.00 note on the ground that it was not the issue being tried. By direction of her counsel she answered the question, and answered in the affirmative. Then she was asked if she had placed the name of S. J. Weaver upon the back of that note and without objection she answered that she did. The note was then offered in evidence and objected to as immaterial, incompetent and collateral. It was received and defendant's counsel excepted.

Another note for $1,000.00, dated August 9th, 1900, was shown the defendant and she was asked if she had written the names of her mother and S. J. Weaver on the back of that note and without objection she replied in the affirmative. This note was also offered and received in evidence over the objection of defendant's counsel, the court remarking that "it will necessitate the trial of the incidents concerning each of these notes to put them in evidence."

The prevailing opinion asserts that it was error for the court to receive in evidence the two notes for $1,500.00 and $1,000.00 respectively, purporting to bear the indorsements of S. J. Weaver and Harriet E. Wells. The case of People v. Corbin (56 N. Y. 365) is relied upon as authority for the

broad proposition that evidence of other offenses than that charged in the indictment is never admissible on the question of guilty knowledge or intent, but a mere glance at the opinion will suffice to show that it lays down no such startling doctrine. On the contrary, all that is held in that case is, that an admission by a defendant of the forgery of one name is not competent evidence to prove the intent with which a different and entirely disconnected name has been used by one accused of forging the latter. But that is not this case. Here the other notes were not only made at about the same time, by the same person and in pursuance of a single purpose, but the names used were those of persons who were associated with each other and with the defendant, and had all figured on some of these notes together and on others separately, in such a way as to create that combination of time, place and circumstance which is essential to make such proof competent under the authorities above cited. There was such a connection between the transactions and the persons involved in the various notes now under discussion, that they were all competent as bearing upon the intent with which the defendant signed the name of Davis to the note set forth in the indictment.

It is further contended that, since the court admitted these last-mentioned notes in evidence, the defendant should have been allowed to go fully into all the details of her household economy for the purpose of explaining why she thought she had authority to use the names of her husband and mother. A complete answer to that contention is to be found in the record. She was given all the opportunity that was legitimate and proper. The court could not well have gone further in that direction than it did, without utterly disregarding all rules of evidence and all waste of time in the conduct of the trial.

One of the first questions addressed to the defendant upon

her redirect examination was as follows: "State why you put the name of Simon J. Weaver on the back of the $5,000.00 note, and state it fully?" The defendant answered, "Because I thought he was good for it and would pay it." When pressed for a further answer she said, "I don't don't know any further why; it went to pay his household bills and to take up an obligation of his."

So, with reference to the use of her mother's name, the defendant was permitted to make the fullest explanation. She stated that she placed this name on the $5,000.00 note and the $1,200.00 note, "because I thought I had a perfect right to use her name and would keep our family troubles from her and not worry her with them, and I fully believed when I asked for the money it would come, as I had been promised it for some time." This was followed by an ample statement as to the use made of the proceeds of the $5,000.00 note and the history of the various other notes, and by the mother's own testimony to the effect that, although the defendant had no express authority to use her name, its use had never been questioned. To quote the mother's own language, "she had no written power of attorney, but she had an authorization, I might say, to sign my name and open my mail matter and draw checks and such things."

What more should the court have done? It is said that since the prosecution was permitted to prove the defendant's alleged forgeries of the names of her husband and mother, the defense should have been allowed to put in evidence a large package of bills and receipts showing the numberless items of household expenditures, which, it is said, went to make up the sum totals for which the various notes were claimed to have been given. Suppose that had been done, what would it have explained? Simply that the defendant had expended a far larger sum of money than the monthly allowance which she received from her husband. Would these household bills have shown the reason or authority for

the creation of the indebtedness evidenced by the notes? Would they have proven anything upon the subject of defendant's authority to use the names of her husband and mother upon these notes, that was not stated in the defendant's oral testimony ? Would a trunk full of tradesmen's bills throw any light upon the intent with which these names were used? Is it not obvious that such evidence would simply have multiplied collateral issues, until the real question in the case would have been lost sight of altogether! These bills and receipts would have no probative weight in determining the question whether the defendant was authorized to use the names of her husband and mother as indorsers upon promissory notes, much less upon the question whether she had authority to use the name of Davis for that purpose. Their reception in evidence would have opened the door to endless and useless cross-examination as to their correctness and reasonableness; as to their payment out of the proceeds of notes purporting to bear the indorsement of the husband and mother; as to the husband's knowledge of and legal liability for the indebtedness, and, at the end of it all, the real question would have been buried beneath a mass of collateral, irrelevant and inconclusive matter.

Another prominent fact in this case needs to be considered in the effort to get a fair perspective of the trial. On the 4th day of October, 1900, the defendant signed a paper in which she confessed that she had forged the names of Harriet E. Wells and Martin Davis as indorsers to the note in issue. It was received in evidence without objection. We are not concerned with the academic or moral considerations suggested by the husband's participation in the interview that led to the signing of this confession. We are dealing with law and fact instead of sentimentality. The explanation of the defendant that she signed the confession at the request of her husband, and upon the representation

of Swanton that he simply wanted it for his own use and to save loss to the bank in case of a trial, is in the record. If there was any other explanation of this unfortunate episode it was not offered at the trial. The confession was in the case and the court was bound to submit it to the jury. It was not conclusive, but clearly competent and strongly evidentiary.

We now come to the criticisms upon the charge to the jury. It goes without saying that the charge is to be considered, not in sections or hypercritically as a thing separate from the rest of the trial, but fairly as a whole and in the light of all the proofs, facts and circumstances in the case. When the charge is so considered it will be perceived that the learned trial judge had a most difficult and delicate duty to perform. Under the criminal law he was compelled to submit to the jury as an issue of fact, a question that in a civil case and upon the same proofs would have presented only an issue of law. In other words, the trial judge was called upon to deliver an impartial charge in a criminal case so essentially one sided on its merits that the same evidence in a civil case would have required a decision against the defendant as matter of law. The only semblance of a question of fact on the merits was whether the defendant believed that she had the right to use the name of Davis as indorser upon the note of September 17th, 1900. The defendant's expressed belief in that regard was of no legal consequence, and constituted no defense to the charge of forgery, unless there was some colorable ground for that belief based upon then existing facts. (People v. Stevens, 109 N. Y. 159.) This does not mean a mere belief in, or hope of subsequent sanction or ratification of a wholly unauthorized act, but a belief founded upon facts in existence and known to the defendant at the time of the commission of the act which is challenged as a forgery. When the evidence of the defendant upon this point is carefully scanned, not even the

defendant upon this point is carefully scanned, not even the subtle and ingenious arguments of her able counsel can find anything of genuine substance to lay hold of.

As we have seen, the defendant admitted that Davis had never refused her requests for indorsement, and yet she had used his name upon the $5,000.00 note without calling his attention to the fact. The defendant asked Davis to write the face of the note in issue for her, without any intention of using his name thereon as indorser, but when the cashier of the bank suggested that he would like the name of Davis as an indorser, she straightaway went to the latter's office to obtain the very authority which she now claims to have then had. Failing to find Davis, the defendant sought him a second time, and being again unsuccessful, she then, for the first time, concluded that he would sanction and ratify her act although there was no reference to the subject in any of their subsequent interviews. It is in the light of these circumstances that the charge of the trial court is to be judicially considered.

Since no isolated extract from the charge can be regarded as a fair index of its tenor as a whole, we shall content ourselves with the observation that, taken in its entirety, and read in the light of the evidence, it was a reasonably fair and impartial presentation to the jury of an exceedingly delicate and troublesome case.

It is no argument to say that the parts selected for criticism are faulty and vulnerable. If that is to be the test, few charges will survive the ordeal of appellate scrutiny. The question is not whether the charge is perfect, but whether under it the case was fairly submitted to the jury. Measured by this standard, we think there is no such error in the charge as to call for a reversal of the judgment herein.

The judgment should be affirmed.

BARTLETT, J. (PARKER, Ch. J., HAIGHT, VANN and CUL-
LEN, JJ., in result in memoranda), concur with O'BRIEN, J.;
WERNER, J., reads dissenting opinion.

Judgment reversed, etc.