## Court of Appeals.

### *March*, 1887.

### PEOPLE *v.* EVERHARDT.

#### (Affirming 5 *N. Y. Crim. Rep.* 91.)

#### ALIAS.—CORROBORATION OF ACCOMPLICE.—ADJOURNMENT OF COURT.

Where a person has been indicted by his true name and several aliases, it is not error to permit the swearing of jurors and witnesses by using the defendant's name and his aliases in the form of an oath, in the absence of proof that a juror had such a prejudice by reason of the numerous aliases of defendant that he could not fairly and impartially try the case.

The provision of section 399 of the Code of Criminal Procedure in reference to the corroboration of the testimony of an accomplice, are complied with if there is some other evidence fairly tending to connect defendant with the commission of the crime, so that his conviction will not rest entirely upon the evidence of the accomplice.

Upon the trial of a defendant for forgery, it is competent to prove

the guilty knowledge and intent of defendant by showing that he has committed other forgeries, and such evidence can be considered by the jury for that purpose only.

Judgment in this case was postponed at the request of defendant to the 22d of December to enable his counsel to make a motion in arrest of judgment and for a new trial. On that day, he did not appear or request to appear in court to make his motion, and the court thereupon adjourned over the term. Early in the ensuing month, the district attorney moved for a judgment, which was opposed by the defendant on the ground that by the adjournment the court had lost jurisdiction. *Held*, that this objection was untenable ; that defendant by not appearing or offering to appear on the adjourned day waived the delay in pronouncing judgment.

Appeal by the defendant Charles J. Everhardt, from a judgment of the General Term of the Supreme Court in the First Department, of January 4, 1887, which affirmed a judgment of the Court of General Sessions of the City and County of New York, entered upon a verdict convicting defendant of forgery in the second degree.

The case at General Term is reported in 5 *N. Y. Crim. Rep.* 91, where will be found a full statement of facts and the briefs of counsel on both sides.

*A. Suydam*, for defendant, appellant.

*McKenzie Semple*, assistant district attorney, for the people, respondents.

EARL, J.—The defendant was convicted in the Court of General Sessions in the city of New York of the crime of forgery in the second degree, committed by uttering a forged check knowing it to be forged.

Prior to his conviction, one Gaylord had been convicted of the same offense for uttering the same check, and had been sentenced to the State prison at Sing Sing. He was produced as a witness on the trial of the defendant and testified that he received the forged check from him and was induced by him to attempt to obtain the money upon

it from the bank upon which it was drawn. He was therefore an accomplice, and the objection is now made that his testimony was not sufficiently corroborated under section 399 of the Code of Criminal Procedure,—which provides that "a conviction cannot be had upon the testimony of an accomplice unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime." Prior to the enactment of this section it was customary for judges to instruct jurors that they should not convict a defendant of crime upon the evidence of an accomplice unless such evidence was corroborated; and yet it was the law in this State that a defendant could be convicted upon the uncorroborated evidence of an accomplice if the jury believed it. This section has changed that rule of law and requires that there should be simply corroborative evidence, which tends to connect the defendant with the commission of the crime.

Here, without referring particularly to the evidence of Schulken and of Caroline Gaylord, we think such evidence was sufficient to show some active agency on the part of the defendant in uttering the check, and thus to connect him with the commission of the crime, and that satisfies the law. Whether that evidence was sufficient corroboration of the accomplice was for the determination of the jury. The law is complied with if there is some other evidence fairly tending to connect the defendant with the commission of the crime so that his conviction will not rest entirely upon the evidence of the accomplice.

Upon the trial, the people were allowed to prove, against the objection of the defendant, the uttering of other forged checks by him upon other occasions. In this there was no error. The defendant by his plea of not guilty had put in issue everything which it was incumbent upon the people to prove. They had no direct or positive evidence that he personally forged the check which he uttered, and it was open for him to show that at the time he uttered it he had no knowledge that it was forged, and was therefore inno-

cent of the crime; and for the purpose of showing the prisoner's guilty knowledge in such cases it has always been held competent to prove other forgeries. Mayer *v.* People, 80 *N. Y.* 364; People *v.* Shulman, *Id.* 373. Such proof is not received for the purpose of showing other crimes than that charged in the indictment, but for the purpose of showing the guilty knowledge and intent which are elements of the crime charged, and it can be considered by the jury only for that purpose. Although the evidence of Gaylord, corroborated as it was, as to the guilty knowledge of the defendant, was quite clear and convincing, yet the people were not bound to rest upon a *prima facie* case, but had the right to confirm that evidence by the proof as to the uttering of other forged checks.

The defendant was described in the indictment as "George Hartman, otherwise called George Peters, otherwise called Mash Market Jake, otherwise called Charles Coke, otherwise called Charles McGloin." Upon the trial, these names were repeated by the clerk in the oath administered to the jurors challenged, and the counsel for the defendant objected to the repetition of such names on the ground that it tended to prejudice the defendant in the minds of the jurors; and he admitted and offered to prove that the true name of the defendant was Charles Everhardt. The trial judge stated in reply that he could see no objection to the clerk inserting in the subsequent proceedings the name which the defendant asserted was his true name, and referring to the fact that he was indicted under another name. The defendant's counsel excepted, and again asked the court to instruct the clerk, in swearing the jurors and the witnesses, that he should designate the defendant as Charles J. Everhardt, and omit the fictitious names. The court replied that he would instruct the clerk to designate the defendant as Charles J. Everhardt, and would allow him to state the several other names. To this ruling the defendant's counsel excepted. Thereafter, throughout the trial at each administration of an oath the clerk, under the instruc-

tions of the court. designated the defendant as "Charles J. Everhardt, indicted as George Hartman, otherwise called George Peters, otherwise called Mash Market Jake, otherwise called Charles Coke, otherwise called Charles McGloin." At each repetition of these names defendant's counsel objected thereto and moved that the defendant be designated by the name of Charles J. Everhardt, and not by the fictitious names. The objections were overruled and the motion denied, and defendant's counsel excepted. It appeared from the examination of some of the jurors that they were prejudiced by the fact that the defendant appeared to have so many different names, and they were excluded from the jury on that account, and twelve jurors were finally impaneled against whom there was no objection. Section 277 of the Code of Criminal Procedure provides that " if the defendant is indicted by a fictitious or erroneous name and in any stage of the proceedings his true name is discovered, it may be included in the subsequent proceedings referring to the fact of his being indicted by the name mentioned in the indictment." No material error was committed by the repetition of the fictitious names. While undoubtedly they might with propriety have been omitted in the administration of the oath to jurors and witnesses after the true name was discovered and inserted in the indictment and other proceedings, yet as such names all appeared in the indictment and in the evidence, it was not error to repeat them whenever it became necessary to name the defendant, and it cannot be assumed that any legal harm was thereby done to him.

After the jury returned their verdict of guilty, the counsel for the defendant requested that the defendant be remanded until the Tuesday following, which was the twenty-second day of December, that he might then make a motion for arrest of judgment, and for a new trial, and the court granted the request and ordered that the prisoner should be remanded until that day. The record then states that no further proceedings were had and no motion was

made by either party during the December Term of the
court; that afterward, on December 24, 1885, the Decem-
ber Term of the court was finally adjourned without day;
that afterward, on January 7, 1886, at the January Term
of the court, the same judge presiding, the following pro-
ceedings were had : The defendant being led to the bar of
court, the district-attorney moved for judgment, and the
defendant being asked if he had any cause to say why judg-
ment should not be pronounced against him, his counsel
moved for a new trial upon various grounds mentioned,
being for errors committed during the progress of the trial.
He also moved that judgment should be arrested because,
among other things, "the verdict was rendered on Decem-
ber 18, 1885, and during the December Term of the court;
and afterward, to wit, on December 24, 1885, the court was
duly adjourned until the next term, by which adjournment
the December Term was finally adjourned without day, no
judgment having been rendered, and the defendant not
having applied for or consented to any delay in the rendi-
tion of judgment beyond December 22, 1885, being the
Tuesday following next after the day on which the verdict
was rendered, and the court now holding the January Term
1886, has no jurisdiction to render judgment in the action."
The court which pronounced the judgment was the same
court which tried the indictment, and in which the verdict
was rendered, and it would be a sufficient answer in this case
that no substantial harm was done to the defendant by the
delay from December 22 to January 7 following. But upon
this record, it may fairly be said that the defendant, not
objecting, waived any delay within the meaning of section
472 of the Code of Criminal Procedure,—which provides
that time for pronouncing judgment after a verdict of
guilty "must be at least two days after the verdict, if the
court intend to remain in session so long, or if not, as re-
mote a time as can reasonably be allowed; but any delay
may be waived by the defendant." Judgment in this case
was postponed at the request of the defendant until Decem-

ber 22, to enable his counsel to make a motion for arrest of judgment and for a new trial. On that day he did not appear or request to appear in court to make his motion, and hence he must be assumed to have been wholly indifferent to the delay and to have consented thereto. There is, therefore, no reason for saying that the court lost jurisdiction to pronounce judgment on a subsequent day.

We have now noticed briefly all the allegations of error brought to our attention by the counsel for the defendant, and believe that none of them are well founded.

The judgment should be affirmed.

All concur.

Judgment affirmed.