PEOPLE v. FURLONG.

(Supreme Court, Special Term, Kings County. April 12, 1910.)

1. BRIBERY (§ 1*)—STATUTORY PROVISIONS—SEPARATE AND SINGLE OFFENSES.
    Under Penal Law (Consol. Laws, c. 40) § 372, formerly section 72 of the Penal Code, which prescribes the punishment of a judicial officer "who asks, receives, or agrees to receive a bribe," three acts are specified, any one of which by itself and alone could be punished as a complete crime, but these three separate acts of asking, agreeing to receive, and receiving

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

a bribe, when done with reference to the same subject-matter, are to be regarded as constituting a single crime.

[Ed. Note.—For other cases, see Bribery, Cent. Dig. §§ 1–3; Dec. Dig. § 1.*]

2. BRIBERY (§ 6*)—INDICTMENT—SUFFICIENCY.

An indictment for bribery charging the defendant, a city magistrate, with asking for and agreeing to receive a bribe upon an agreement that his action as magistrate would be influenced thereby in approving recognizances and undertakings executed by a certain person named who should take nominal title to a house as surety upon undertakings, and that a third person should collect the money paid by persons for whose appearance such undertakings were given, is sufficient under Penal Law (Consol. Laws, c. 40) § 372, formerly Penal Code, § 72, prescribing the punishment for judicial officers who ask, receive, or agree to receive a bribe.

[Ed. Note.—For other cases, see Bribery, Cent. Dig. §§ 5–8; Dec. Dig. § 6.*]

3. BRIBERY (§ 6*)—JUDICIAL ACTION—ELEMENTS OF OFFENSE—INDICTMENT.

It is not necessary to convict under an indictment for bribery framed under Penal Law (Consol. Laws, c. 40) § 372, prescribing punishment of judicial officers who ask, receive, or agree to receive a bribe, that the person who gave the bribe pursuant to the agreement be specified in the indictment, since the defendant might be convicted simply for agreeing to receive it from any person or persons who might be induced to deal with a person named in the indictment as an associate of defendant, and whose identity was not in contemplation at the time of such agreement.

[Ed. Note.—For other cases, see Bribery, Cent. Dig. §§ 5–8; Dec. Dig. § 6.*]

4. BRIBERY (§ 1*)—JUDICIAL ACTION—ELEMENTS OF OFFENSE.

Under Penal Law (Consol. Laws, c. 40) § 372, prescribing the punishment for judicial officers who agree to receive a bribe, it is not necessary that any particular proceeding should have been pending.

[Ed. Note.—For other cases, see Bribery, Cent. Dig. §§ 1–3; Dec. Dig. § 1.*]

5. INDICTMENT AND INFORMATION (§ 125*)—DUPLICITY—ALLEGATIONS OF FACTS CONSTITUTING ANOTHER OFFENSE.

It is immaterial that an indictment·states facts constituting another offense—i. e., conspiracy—provided the same facts constitute the crime intended to be charged.

[Ed. Note.—For other cases, see Indictment and Information, Cent. Dig. §§ 334–400; Dec. Dig. § 125.*]

6. CRIMINAL LAW (§ 200*)—FORMER JEOPARDY—IDENTITY OF OFFENSES.

A conviction for bribery had on an indictment framed under Penal Law (Consol. Laws, c. 40) § 372, prescribing punishment of judicial officers who agree to receive a bribe, and charging the separate offenses defined by the statute as forming a connected series relating to the same subject-matter, is a conviction for a single crime, and, in view of Penal Law, § 1938, will afford the protection of double jeopardy to the defendant against prosecution for an act proved under the indictment, but not specifically charged therein.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 386–409; Dec. Dig. § 200.*]

7. CRIMINAL LAW (§ 369*)—EVIDENCE—RELATION TO INFORMER AND ASSOCIATE.

Evidence tending to show that one accused of bribery committed other acts of corruptly receiving moneys from the informer is relevant as tending to show intimate and confidential relations between the informer and the defendant, the parties to the alleged corrupt agreement.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 822–824; Dec. Dig. § 369.*]

8. CRIMINAL LAW (§ 369*)—EVIDENCE—ADMISSIBLE IN PART.

Where evidence is relevant for any purpose, it is not incompetent simply because it tends to prove the defendant guilty of other crimes.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 822–824; Dec. Dig. § 369.*]

9. BRIBERY (§ 10*)—EVIDENCE—ADMISSIBILITY.

Where an indictment framed under Penal Law (Consol. Laws, c. 40) § 372, prescribing the punishment of judicial officers for asking, receiving, or agreeing to receive a bribe, charged that the crime of receiving a bribe was made with reference to a house, the title to which was in the accused, a city magistrate, though held by a dummy, the admission in evidence of documents and oral testimony tending to show the accused's acts of ownership of said property is proper.

[Ed. Note.—For other cases, see Bribery, Cent. Dig. § 9; Dec. Dig. § 10.*]

10. CRIMINAL LAW (§ 662*)—EVIDENCE AT PRELIMINARY TRIAL—DEATH OF WITNESS—METHOD OF PROOF—STATUTES.

Code Cr. Proc. § 8, provides that accused is entitled to be confronted with the witnesses against him in the presence of the court, except that where there has been a preliminary examination before a magistrate, and the testimony reduced by him to the form of a deposition in the presence of the defendant who has cross-examined the witness, the deposition of the witness may be read. Code Cr. Proc. § 204, prescribes the manner in which testimony given by witnesses shall be reduced to writing as a deposition and authenticated, and section 60 provides for the preservation in writing of testimony taken in a criminal proceeding before a police magistrate. Held that, where the design of the statutes as to confrontation by witnesses was accomplished by a Supreme Court justice sitting as a magistrate at the preliminary hearing, the reading of the evidence of a witness since deceased is proper in a subsequent proceeding.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1538–1548; Dec. Dig. § 662.*]

11. CRIMINAL LAW (§ 511*)—TESTIMONY OF ACCOMPLICE—CORROBORATION—SUFFICIENCY—CONNECTING ACCUSED WITH CRIME.

In a prosecution for bribery, evidence *held* sufficient to connect accused with the crime charged in corroboration of the accomplice, as required by Code Cr. Proc. § 399.

[Ed. Note.—For other cases, see Criminal Law, Cent. Dig. §§ 1127–1137; Dec. Dig. § 511.*]

Henry J. Furlong was convicted of the crime of asking for and agreeing to receive a bribe, and he makes application for a certificate of reasonable doubt. Application denied.

See, also, 140 App. Div. 179, 125 N. Y. Supp. 164.

William Bourke Cockran and Martin T. Manton, for relator.
John F. Clarke, Dist. Atty., for the People.

STAPLETON, J. The defendant was convicted of the crime of asking for and agreeing to receive a bribe and money and a promise and agreement therefor in violation of the law of this state.

This application is for a certificate of reasonable doubt. In the moving papers the defendant made 11 formal specifications of the particular rulings alleged to be erroneous, and the grounds upon which the application is based. The specifications will be disposed of in the order adopted by the defendant.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The first four specifications may be considered together as practically involving the same proposition of law. They are as follows: (1) That the indictment failed to charge the crime of asking for and agreeing to receive a bribe within the meaning of section 372 of the penal law (Consol. Laws, c. 40), under which it was drawn, in that the indictment actually set forth and described a conspiracy to pervert justice rather than the crime of asking for and agreeing to accept a bribe; and therefore (2) that the indictment should have been dismissed when application was made to dismiss by counsel for the defendant on the district attorney's opening, and again when the same motion was renewed at the close of the people's case; (3) that the indictment according to the contention of the district attorney and the ruling of the trial court does not charge the defendant with asking for or agreeing to receive a bribe upon an agreement or understanding that his action or decision as a magistrate should be affected thereby in any action or proceeding actually pending or likely to come before him, as the said crime is designated in said section 372, but with asking for and agreeing to accept bribes upon an understanding and agreement that his action or decision would be affected thereby with reference to recognizances or undertakings, without specifying any particular recognizance or undertaking, or naming any cases in which such recognizances or undertaking was offered, or could be offered, and without alleging that any cases or proceedings were pending or likely to come before him as such magistrate in which such recognizances or undertakings could be offered; (4) that the prosecution was allowed to introduce testimony intended to prove as a material part of its case against the defendant that he did actually accept a bribe for approving a bond offered by one Uttal in a case or proceeding actually pending before the Magistrate's Court, although the indictment failed to mention said Uttal or said alleged act of bribery, and this defendant, if again indicted and prosecuted for such alleged offense, could not plead in bar thereof his conviction on this indictment.

Section 72 of the Penal Code which was in operation at the time alleged in the indictment and section 372 of the penal law referred to in the specification of the defendant are written in essentials precisely in the same words.

Section 72 of the Penal Code was as follows:

"Sec. 72. Officer Accepting a Bribe.—A judicial officer, a person who executes any of the functions of a public office not designated in titles VI and VII of this Code, or a person employed by or acting for the state, who asks, receives, or agrees to receive a bribe, or any money, property, or value of any kind, or any promise or agreement therefor, upon any agreement or understanding that his vote, opinion, judgment, action, decision, or other official proceeding, shall be influenced thereby, or that he will do or omit any act or proceeding, or in any way neglect or violate any official duty, is punishable by imprisonment for not more than ten years, or by fine of not more than five thousand dollars, or both. A conviction also forfeits any office held by the offender, and forever disqualifies him from holding any public office under the state."

In People v. Gibson, 191 N. Y. 227, 230, 83 N. E. 976, 977, 123 Am. St. Rep. 597, the court, Hiscock, J., say:

"This section of the Code undoubtedly does specify three acts, any one of which by itself and alone might be punished as a completed crime. In the interest of public safety and to discourage the commission of this species of crime, the Legislature undoubtedly did enact that a person might be convicted simply for asking. or for agreeing to receive, a bribe, even though his request or agreement did not ripen into actual receipt of the money. But while this question is academic in this case, and therefore not decided, we do not think that this section would be so construed as to mean that a person might be punished for receiving a bribe and also separately and independently for asking and also for agreeing to receive the same bribe, but that these separate acts, when forming a connected series relative to the same subject-matter, would be regarded as constituting a single crime."

The indictment in the case at bar divested of superfluous verbiage charges the defendant, being a judicial officer, with feloniously agreeing to receive a bribe and a promise of agreement therefor upon an agreement or understanding that his action or decision as a city magistrate should be influenced thereby in approving recognizances and undertakings executed by one Florence Arnstein, and that property to be offered in justification would be premises No. 925 Glenmore avenue, which would be purchased by the defendant for the sum of $150, and that he should take title in the name of Arnstein, and that Arnstein should justify before him as surety upon undertakings, and that one Gotthelf, with whom the agreement was made, should collect money from persons for whose appearance the undertaking should be given, and divide the proceeds with the defendant. To my mind these acts obviously constitute a violation of the provision of law hereinbefore cited, and were properly pleaded in the indictment, and there was no error in refusing to dismiss it. It was not essential to the method according to which the jury found the defendant committed the crime to specify the individual who gave the bribe. The defendant might be convicted simply for agreeing to receive it from any person or persons who might be induced to deal with Gotthelf, and whose identity was not in contemplation at the time of this agreement. There is nothing in the statute which requires that a proceeding be pending.

I am convinced that a judicial officer could commit the crime charged by agreeing with a confederate generally to use certain premises as security in undertakings for the purpose of obtaining money through his official action of approval, and that all who come and pay may be served, and that such agreement is felonious and violative of the section of law under which the indictment was found. It cannot be that an agreement to receive a bribe from a single designated source is criminal, and that an agreement to receive bribes from any one or more persons unknown at the time of the agreement who may be induced to benefit by the corrupt agreement.is not. I believe it to be a fanciful contention that the defendant could not plead in bar this conviction if he should be called upon at some future time to answer the charge of having received a bribe for taking the undertaking in the case of one Uttal which transaction was not pleaded, but which was proved as evidence of the corrupt agreement. While it was confessedly not decided in the Gibson Case, supra, the eminent writer stated the obvious conclusion that separate acts form-

ing a connected series relative to the same subject-matter would be regarded as constituting a single crime. A defendant undoubtedly could be indicted for each bribe he received, but he has no complaint if the authorities see fit to stand on an indictment and proof of agreeing to receive bribes, an essential part of which agreement was the use of certain designated premises with the result that the law would regard all separate acts in execution and furtherance of that agreement by the use of those premises as constituting a single crime. See section 1938, Penal Law; People ex rel. McDonald v. Keeler, 99 N. Y. 463, 2 N. E. 615, 52 Am. Rep. 49. I am of the opinion that this defendant could plead the conviction in this case in bar of any prosecution predicated upon the unlawful use of the premises 925 Glenmore avenue in the approval of undertakings. It is immaterial even if the indictment stated facts constituting another crime—i. e., conspiracy—provided the same facts constitute the crime charged.

The fifth specification is that the court committed grave and prejudicial errors which require a reversal of this judgment in permitting and allowing testimony tending to show that the defendant committed other acts of corruptly receiving moneys from the informer. The testimony assailed was relevant to show intimate and apparently confidential relations existing between the informer and the defendant, the parties to the alleged corrupt agreement. Adams v. People, 9 Hun, 89, 94. Where the evidence is relevant, it is not inadmissible simply because it tended to prove the defendant and the informer guilty of other crimes. People v. Peckens, 153 N. Y. 576, 594, 47 N. E. 883.

The sixth specification reads:

"That the court committed error in admitting testimony purporting to show that the defendant was the real owner of 925 Glenmore avenue, and that he held title thereto in the name of a dummy, and in permitting and allowing in evidence documents and oral testimony tending to show acts of ownership of said property by the defendant; the defendant's claim being that this was foreign to the issue, and not connected with the alleged act of corruptly receiving a bribe."

The evidence, the subject of complaint in this specification, goes to the heart of the offense charged, and was manifestly admissible.

The seventh specification reads:

"It having appeared that one of the witnesses called by the prosecution in a hearing before a Supreme Court justice sitting as a magistrate who held this defendant for the grand jury had died before this case was tried, the court committed grave error in permitting the district attorney, under objection and exception of counsel for the defendant, to read in evidence the testimony given by the said deceased witness before Judge Crane; the claim of the defendant being that this evidence is inadmissible under section 8 of the Code of Criminal Procedure, and in violation of the defendant's rights, as the same are defined in and by said section."

Section 8 of the Code of Criminal Procedure, in so far as material, reads as follows:

"In a criminal action the defendant is entitled * * * to produce witnesses in his behalf, and to be confronted with the witnesses against him in the presence of the court, except that where the charge has been preliminarily examined before a magistrate, and the testimony reduced by him to the

form of a deposition in the presence of the defendant, who has, either in person or by counsel cross-examined, cr had an opportunity to cross-examine, the witness, or where the testimony of a witness on the part of the people, has been taken according to the provisions of section two hundred and nineteen of this Code, the deposition of the witness may be read upon its being satisfactorily shown to the court that he is dead or insane, or cannot with due diligence be found in the state."

Section 204 of the Code of Criminal Procedure reads.

"The testimony given by each witness must be reduced to writing, as a deposition, by the magistrate or under his direction, and authenticated in the following manner: (1) The authentication must state the name and age of the witness, his place of residence and his business or profession. (2) It must, unless deposition by question and answer be waived by the defendant and the witness, contain the questions put to the witness, and his answers thereto; each answer being distinctly read to him as it is taken down and being corrected or added to, until it is made conformable to what he declares to be the truth. (3) If a question put be objected to on either side, and overruled, or the witness decline answering it, that fact, with the ground on which the question was overruled or the answer declined, must be stated. (4) The deposition must be signed by the witness, or if he refuse to sign it, his reason for refusing must be stated in writing as he gives it. (5) It must be signed and certified by the magistrate. (6) The foregoing provisions shall apply to preliminary examinations in the city and county of New York when either the defendant or the district attorney, or the representative of the district attorney, shall so elect."

The material portion of section 60 of the Code of Criminal Procedure reads:

"In an examination held in any criminal proceeding by a police magistrate in the city of Brooklyn, the testimony of each witness may, in the discretion of the magistrate, be taken as a deposition by the official stenographer of the court in which said magistrate holds such examination. Such minutes of the testimony when so taken and when certified by the stenographer and by the magistrate who held such examination, shall both with reference to such examination, and in all procedure in connection with such examination, provided for by any section of this Code not inconsistent herewith, be regarded as actually taken down in writing by such magistrate and subscribed by the witness or witnesses at such examination."

By section 146 of the Code of Criminal Procedure, a magistrate is defined to be an officer having power to issue a warrant for the arrest of a person charged with a crime. Section 147 prescribes that the justices of the Supreme Court are magistrates.

Having in mind that the design of the statute is to insure confrontation of and opportunity to cross-examine adverse witnesses as indicated by the leading cases, discussing the procedure collated in People v. Elliott, 172 N. Y. 146, 64 N. E. 837, 60 L. R. A. 318, and that that design was as effectively accomplished as possible in the examination had before Mr. Justice Crane, it would be a narrow and unreasonable construction of section 60 of the Code of Criminal Procedure to hold that the procedure adopted here was not within its provisions. The argument that the defendant relying on section 8 of the Code of Criminal Procedure curtailed his cross-examination of the witnesses, since deceased, much to his harm, if her testimony was admissible on the trial, is ingenuous, but not convincing.

In People v. Elliott, 172 N. Y. 146, 152, 64 N. E. 837, 839, 60 L. R. A. 318, the court said:

"The object of all trials, civil and criminal, is to arrive at the truth and do justice, and it would certainly tend to an opposite result if testimony carefully taken upon a former trial, at which the accused was represented by counsel, who was permitted the right of cross-examination, is to be excluded by the mere accident of the death of the witness, which is liable to occur in all prolonged litigations."

While this observation was made relating to a former trial, it admonished courts that, where the accuracy of the minutes is conceded and full opportunity to safeguard the defendant's fundamental rights was accorded, a statute should not be narrowly and literally read to defeat justice.

The eighth specification reads:

"That the court committed grave and prejudicial error in allowing in evidence a letter written by a witness called by the defense who testified to the reputation for truth and veracity of the informer in this case, and while on the stand the district attorney was permitted to have him identify and acknowledge a letter written by him, not to defendant, but to another person, and without any suggestion that defendant had ever seen or heard of such letter, which letter was afterward offered in evidence against the objection and exception of defendant's counsel, and which letter contained prejudicial statements of influence that the witness had with the defendant in his official capacity as a judge, which letter concededly was not inspired or written by the defendant, but by the witness through a third person who was having some difficulty which brought her in touch with defendant's court. The court permitted this testimony to affect the credibility of the witness and for that only. The defendant claims that this was error, for it was prejudicial to the defendant, without his having been a party to the writing of the letter and without his having consented that the same be written. Further, that the letter in no way affected the credibility of the writer."

It has been shown that evidence relevant for any purposes is not inadmissible because it tended to prove other facts.

The ninth specification reads:

"That the court committed error in permitting the case to go to the jury as a question of fact, for the reason that the prosecution had failed to offer any evidence corroborating that of the informer, Gotthelf, and that the court should have decided as a matter of law that there was insufficient corroboration of the informer's testimony to warrant the court in submitting it to the jury."

An examination of the record reveals evidence: That the defendant paid the purchase price of $150 for 925 Glenmore avenue. The grantor in the deed to Arnstein bought the equity for $200. There were three mortgages aggregating $5,875. The property, highest value, was $6,000. The grantor, the informer, and defendant met by appointment at the informer's office. The grantor and his wife signed the deed, and placed the property in the name of Florence Arnstein. Mrs. Arnstein was not present when the deal was consummated. The defendant received rents of the premises after the purchase on the 2d of November. He received a check from Gotthelf for $22.50, on the face of which appeared the phrase "Rents for October, 1908, 925 Glenmore avenue." This check was deposited by the defendant and collected. The defendant placed August Pollman in the house as janitor. The defendant in writing directed what repairs were to be made, directed the employment of a designated plumber. Pollman, the defendant's agent, paid for the repairs. The

defendant wrote the informer to collect the accrued rent, stating, "If you don't, I will do it myself." The defendant prepared a notice directed to a tenant to vacate the premises, and wrote the informer that he did so, and directed Pollman to serve it upon her. The property was used for a bond taken before the defendant. This was the Uttal bond hereinbefore referred to. Mrs. Arnstein signed the bond and the defendant took the acknowledgment, accepted the bond, and discharged the person for whom the bond was given. He took the justification fixing the value of the property at $7,500. He accepted the property which he knew he himself paid for. When he took the bond, the premises were under foreclosure, and a lis pendens had been filed. The informer testified that on the face of the check given in payment for the purchase of the premises was written, "for purchase of 925 Glenmore avenue." Defendant did not produce the check on the trial. Before the grand jury he produced other checks given by the informer. The informer testified that the defendant told him to demand $50 from the attorney for the plaintiff in the foreclosure proceedings for a notice of appearance, and that he got the $50. The defendant sent his officer to the informer's office who received a check drawn to the order of the officer for that amount. The officer got the money and paid it to the defendant.

In my opinion these circumstances have some tendency to connect the defendant with the commission of a crime in corroboration of the accomplice within the meaning of the provision of section 399 of the Code of Criminal Procedure, and in accordance with the authorities construing those provisions.

In People v. Elliott, 106 N. Y. 292, 12 N. E. 603, the court said:

"It is not necessary that the corroborative evidence of itself should be sufficient to show the commission of the crime, or to connect the defendant with it. It is sufficient if it tends to connect the defendant with the commission of the crime. Nor need the corroborative evidence be wholly inconsistent with the theory of the defendant's innocence. The court, before it should submit the case to the jury, should be satisfied that there is some corroborative evidence fairly tending to connect the defendant with the commission of the crime, and, when there is, then it is for the jury to determine whether the corroboration is sufficient to satisfy them of the defendant's guilt."

As was said in People v. Everhardt, 104 N. Y. 591, 11 N. E. 62:

"The law is complied with if there is some evidence fairly tending to connect the defendant with the commission of the crime, so that the conviction will not rest entirely upon the evidence of the accomplice."

The eleventh specification reads:

"That the court permitted evidence tending to show that the defendant was guilty of other crimes than that charged by the indictment."

The defendant does not point to any evidence not heretofore considered, and I can find none which was not relevant for some purpose.

The tenth specification reads:

"That the court committed grave and prejudicial errors in its charge, to which exceptions were taken and his refusals to charge."

No errors are indicated in the moving papers or were presented on the argument.

Impressed with the increased responsibility which the statute imposed when it limited the tribunals to which these applications could be made, I have not been content to take refuge in the specifications enumerated by the learned counsel for the defendant in these moving papers. I have carefully read the record, and in my judgment it is singularly free from error. I have read the charge and considered the exceptions, and in my judgment no infringement of the legal rights of the defendant was revealed. I am unable to say that in my opinion there is reasonable doubt whether the judgment should stand, and I am required to deny the application of the defendant.